The next matter on for argument is National Association of Wheat Growers v. Rob Bonta Bonta 20-16758 Okay, I see lots of lawyers at council table, and I don't have any designation that people are splitting any time. So, am I correct in that, or is there... You're correct, Your Honor. I'm reading the press conference. Okay. But you're going... He's not presenting. Okay, so we have lots of people for moral support, but two people that are actually arguing. All right. And I guess... Do I call this plaintiffs or NAWG, or what do I call this? Okay, because NAWG is something I'm just making up, or... Oh, okay, that's long. Okay, so we're ready. Each side has 20 minutes. Thank you. Good morning. Good morning, Your Honors. May it please the Court, Laura Zuckerman, on behalf of California Attorney General Rob Bonta, with the Court's permission, I'd like to observe five minutes for rebuttal. All right, we'll try. Thank you. This case now stands in a dramatically different posture than when the lower court issued the order under review. On January 1st of this year, a new safe harbor warning was adopted for glyphosate. It provides information that allows consumers and workers to make informed decisions about the risk they want to take without the statements that previously caused the lower court concern. This alters the appeal in two ways. First, at the very least, the district court should have an opportunity to consider the new safe harbor warning in the first instance. A remand to the district court may be the most sensible and efficient way to resolve the appeal. Second, the new warning demonstrates that the district court erred in holding that no Proposition 65 glyphosate warning could comply with the First Amendment. This new warning complies with Zauderer because it conveys purely factual and uncontroversial information. It is reasonably related to a substantial governmental interest in promoting public health and safety and consumer choice, and it does not impose undue burdens. It resolves the concerns the district court identified with respect to the general safe harbor warning. Let me ask you this, just to focus myself. Are you arguing that the third alternative warning, the one that was offered at summary judgment, passes Zauderer, or are you now only asserting that the warning from OEHA passes Zauderer? Are you arguing both? Today I will be arguing about the new tailored safe harbor warning for glyphosate. However, it is our position that the previous warning also passes Zauderer, but because you only need one safe harbor warning to be constitutional, the ones that were addressed by the court in its ruling below are really not at issue. Could you help me out? Would you read the warning that you're now arguing for? If you'll give me a minute to grab my binder. So the new safe harbor warning for glyphosate says, at the beginning, California Proposition 65 warning in all capital letters in bold print. Then it says, using this product can expose you to glyphosate. The International Agency for Research on Cancer classified glyphosate as probably carcinogenic to humans. US EPA has determined that glyphosate is not likely to be carcinogenic to humans. Other authorities have made similar determinations. A wide variety of factors affect your potential risk, including the level and duration of exposure to the chemical. For more information, including ways to reduce your exposure, go to www.p65warnings.ca.gov slash glyphosate. So, okay. So it obviously is softened. But my question is, we still have to look at whether it's controversial. And if it's controversial, let's just say that maybe there's a purely factual and misleading part of Zouderer. But let's just say, on the controversial part, how do we get around that? Doesn't NIFLA hold that the topic of the disclosure and the effect on the speaker can make something controversial? And if the warning here, why isn't it forcing the plaintiffs to alter their desired measure? If it's controversial, how do you still make them do it? I understand, Your Honor. Let's talk about the controversial issue first and then the compelled speech part of it. Abortion is controversial. Gun control is controversial. There's no dispute that cancer is awful and should be avoided. Under this court's opinion in CTIA, the wireless, versus the city of Berkeley, a warning is not controversial within the meaning of the First Amendment if it is based on a scientific controversy alone, if the compelled speech does not require taking sides in a heated political controversy. This was this court interpreting NIFLA. But here the federal government disagrees with IARC. So that kind of, I'm not sure that doesn't distinguish it from CTIA 2. Well, actually, I don't believe it does, Your Honor, because even though EPA has a very different view of the science, it has concluded that this warning, this exact warning, provides a sufficient description of its position and is neither false nor misleading. It has also agreed to allow pesticide registrants to use this warning on its products. So EPA, despite disagreeing about the science, has effectively endorsed this warning, which we believe is similar to the fact that the FTC warning in CTIA 2. Okay. I guess just for me to understand the construct, you want to be under Zouderer. Yes. And to me the controversial is where I focus on that particular. And I think you've raised the parade of horribles that anything can be controversial. But here there are a lot of people that don't agree with IARC. So it seems to me that there's an argument that the state wants to be the arbiter of controversial as opposed to the courts. And I think Zouderer puts it in the courts' lap. Now, the parade of horribles is you could always, like, say, for example, Connie Callahan could say it doesn't cause cancer. And Connie Callahan only took a few science classes at Stanford when she was an undergrad and probably would not be shown to have the expertise.  I think that courts could say 99% of the people agree on something in the scientific community. There's always going to be outliers and could probably make that factual determination that Connie Callahan is a nut and doesn't have any expertise. And so that does not make it controversial. But here you actually have people that have much more expertise than Connie Callahan that don't necessarily agree with IARC. And so I'm trying to decide if it's controversial right there, then doesn't that take you out of Zouderer and then we have to go to Hudson? No, I don't believe so, Your Honor, because there was no evidence that radiofrequency radiation caused cancer. At least there was a debate about whether radiofrequency radiation caused cancer in CTIA 2, but the court held that the warning there, which was a safety warning, complied with Zouderer and passed scrutiny under the First Amendment. I think what you're really getting at is how much consensus is needed for a warning like this. I would first say a couple things. First of all, Zouderer does not say that if there's a scientific debate, then you're no longer within its ambit. Secondly, you had mentioned provoking an emotional response. The discount tobacco case from the Sixth Circuit says that simply— But isn't there, if the scientific community is 50-50 on something, why would that not take it out of Zouderer? Because it's a scientific debate, Your Honor, and we believe that the First Amendment case law allows, if you have a reputable agency like IARC on one side— IARC was created in 1965 as the cancer research arm of the World Health Organization. It is funded by 27 member countries, including the U.S. It is widely respected. But who are the people against IARC here? Are they not widely respected, too? No, no, no. EPA is also a respected agency. I cannot— And it's local as opposed to international, right? Yes. I mean, everyone's heard of the EPA. Yes, but we submit that that's not the standard for determining whether something is sufficiently authoritative. Our view is that if there is one organization, one credible, respected, authoritative organization like IARC that makes a cancer hazard determination, then as long as there is a warning like this one that summarizes the science on the other side, people have a right to know before they spray the pesticide. Okay, but I guess—but I'm just trying to take the legal analysis of Zouderer and Central Hudson. My understanding of it is that if any one of those is pulled out, and if it's controversial, then it goes to Central Hudson, and then you would have to pass the narrowly tailored. And the narrowly tailored is what the appellees would argue, or petitioners, or whatever we're going to call them, NOG. What they would argue is it's not narrowly tailored because you can put information out anywhere that you want about what you think about it, but you can't make them put it on their product. Do you agree that if you get to Central Hudson, that's kind of dooming for you? No, Your Honor. We believe that this warning also passes muster under Central Hudson. We do believe it is narrowly tailored. Remember, under FOX, the fit here between the legislative ends and the means used to achieve those ends does not have to be perfect, just reasonable. And here— I'm sorry, I kind of jumped on Judge Zouderer, so go ahead. Well, I just—maybe I don't understand the situation, but I didn't think that you were trying to justify a warning that says that this stuff causes cancer. I thought the warning was just that the International Agency for Research on Cancer has determined that it does. And my understanding was that there's a California regulation, am I wrong, that says that it goes on the list of substances if this agency determines that it can cause cancer. So that, therefore, it seems that what you are asking to be disclosed is factual. Our view is that it is completely factual. It is required by Proposition 65. It's in the statute and in the labor code. There are also OSHA regulations that require disclosure of IR cancer determinations. But, yes, we are saying that people—oh, going back to the question about Central Hudson, we do believe that there's a fit here between the means and the ends. Can I ask, what is the effect of this new safe harbor language? Does it protect the plaintiffs against the world from any challenge under Prop 65? Yes, that's right, Your Honor. And no one can say that the safe harbor doesn't fit, doesn't comply with Prop 65, correct? That's right. No one can determine that—O'Hia? O'Hia. That doesn't comply? Okay. So then my question is, what—so how do we evaluate this new safe harbor warning? Is there factual determination whether or not it's controversial and true? We believe, as a matter of law, this new warning clearly complies with Zauderer. If the court does not agree, then perhaps it makes sense to remand to the district court. So you think we can do it de novo here? Yes. Determine whether or not it is. Okay. But you mentioned earlier that we could also remand. That's right. And if we were to follow that path, what should we say about everything that the district court has done up to this point? Do we have to say anything? If we agree with it, should we say we affirm all that but remand for this? I believe that's in the discretion of the court. Are you talking about if you issue an opinion and remand, like for an indicative ruling? Well, that's what I'm asking what we should do. So say—I don't know what anyone thinks, but say we agree with what the district court has done up to now, but this new warning has come out, and I'm not sure whether or not we can analyze it here. Should we say we agree with everything that the district court has done up to now but remand to look at this new safe harbor, or should we just say nothing is my view, in your view? Well, of course, our view is that the opinion should be vacated and remanded. Well, you would want us to say nothing. Because if we told the district court you were right before, then that kind of gives you a do-over. Well— It's a do-over on a new—it's a new statute, admittedly. It's a new regulation. It really doesn't bear on what the court decided before. Well, no, with one exception. It does make clear that the district court was wrong to issue such a broad injunction. That opinion on the cross motions for summary judgment focused on the general safe harbor warning language known to cause cancer, but the injunction permanently prohibited any Proposition 65 warnings, whatever they said. Well, I think the district court found it was California's burden to prove that there was an appropriate warning, and California didn't meet that burden. Every alternative warning we provided—and this was the lawyers in the case, not OEHA— but every alternative warning we provided addressed more and more of the district court's concerns. But the district court just said there are no possible warnings, and we believe that that decision was an error, and the fact that this warning— Well, could we say that we leave the injunction in place unless the district court finds that this new warning does comply with the First Amendment? I'm sorry, say that again? Could we say that the injunction should stay in place unless the district court finds the new warning does comply with the First Amendment? That is within the court's discretion. But you want to vacate the preliminary injunction entirely. The reference would be vacature, but with or without—and I'll just quickly explain why I see him running out of time. The reason we believe remand with vacature is appropriate is that the new safe harbor demonstrates that there was a flaw in the really broad injunction that the district court issued. But whether with or without vacature, the district court should have an opportunity, in our view, to reconsider its ruling in light of the new warning language. But there's no flaw yet because no one's just said that the new warning complies with the First Amendment. Well, we believe that the warning— Okay, got it. We are hoping that you will believe that as well. It's our view that as a matter of law, it's clear that it complies with Sauderer. Okay, you want to reserve the balance for rebuttal? I do. Thank you, Your Honor. Thank you. Thank you. Good morning, and may it please the Court. Good morning. I'd like to start, Judge Bumate— You want to say your name? I'm sorry, Richard Bress, for the appellants. Thank you. I'd like to start with Judge Bumate's question about the new safe harbor warning. We agree that we can't be held liable for past use of that warning if we use it. We think it's clearly not compliant with Prop 65, and we think the other side has actually admitted it. They say three times in their briefs, at page 2 and 13 of their opening brief and 6 of their reply brief, that a warning must state that the chemicals known to the state to cause cancer are words to that effect. Right. And they acknowledge on page 2 of their reply brief, they say, this one doesn't suggest that it's known to the state to cause cancer. But if O'Hia says it, can anyone challenge it? So they can't challenge it looking backwards. In other words, if we use this warning, they can't say you're liable for use of that warning looking back. But a bounty hunter could sue us, and in the course of that injunctive part of the suit, could argue that the warning, the safe harbor warning, doesn't comply with the statute itself. And if it gets that ruling, we're back to sort of the non-safe harbor warnings, which this court in California. What's the point of a safe harbor if a bounty hunter can challenge it? Well, they can challenge it moving forward. In other words, we can use it for now. Right. Perspectively. Exactly. And so if we were forced to rely on a non-safe harbor warning, as this court held in Calchamber recently, that itself would be an undue burden on our speech because we'd have to be out there taking a risk that something we're now guessing might comply with Prop 65 would not land us in legal jeopardy. And that's a holding of that case at page, I think it's 479 of that case. Let me focus you on that. I'm stuck on this controversial issue. Yes. But is it your position that lack of scientific consensus prevents the warning from being purely factual, uncontroversial, or both? And what is your best case for either point? So thank you, Your Honor, because I wanted to address that next. The fact that this warning we can look at right off the bat and understand that on its face it's not purely factual, and that's because it contains the statement within it that IARC classified glyphosate as probably carcinogenic to humans. That is a statement of IARC's opinion, and indeed its controversial opinion. And this court and video software dealers at page 953 held, the act's labeling requirement is unconstitutionally compelled speech because it does not require disclosure of purely factual information but compels the carrying of the state's controversial opinion. Similarly here, this warning compels the carrying of IARC's controversial opinion. It doesn't matter that it also says that EPA disagrees. That's not enough to inoculate it. And the reason, actually, is that if you look at Zouderer itself, where all of this sprung from, Zouderer contrasts matters of opinion, which you can't compel statement of matters of opinion without heightened scrutiny, with disclosure of purely factual and uncontroversial information, which the court says doesn't impinge much on a person's First Amendment rights. If we are, as Judge Srinivasan summarized it, if the disclosure communicates a controversial opinion, it is outside of Zouderer. And there's good reason for that, right? I mean, if I'm just communicating the ingredient list for my product or a completely consensus view on the health, I've got very little reason not to communicate that. It's not really taking much out of my First Amendment rights. But if the government is requiring me to communicate a third party's or the government's own opinion, subjective opinion, that is disparaging of my product, that trenches far more severely on my First Amendment rights. Isn't that what the California statute says? You have to label if it's known to the state of California. We agree entirely that that's what the statute says. That's the problem, Your Honor. So the statute is unconstitutional? Well, the statute isn't unconstitutional in all of its applications. There's plenty of chemicals where there is consensus that the chemical not only poses a hazard of cancer but poses a risk of cancer. And as to those, we have no argument. But here you've got the absolute contrary situation where not a single agency of any state, any country, or pan-national agency has found that glyphosate poses a risk of cancer in real life to humans. Okay, well, but the regulation has chosen the International Agency for Research on Cancer as the agency and has said that we are going to follow what they say. Is that unconstitutional? So that question actually came up in an earlier case in state court. We don't think it's unconstitutional for purposes of California's own listing requirements. They can list a chemical all they want based on IARC's decision. But what they can't do is choose which agency is going to be authoritative for purposes of the First Amendment. They can't say if IARC thinks X and everybody else in the world thinks Y, IARC's view is simply factual information and uncontroversially true. So isn't it, I was asking, you know, counsel for the state about are you, if you focus on the controversial part of it, I ask them, are you wanting to be the arbiter of what controversy is or does Zouderer put that in the court's lap? And obviously, you know, everyone always has a parade of horribles, and I look at them and I've made arguments on parade of horribles as well, that it seems that there must be ways to satisfy that prong of Zouderer. Absolutely, Your Honor. But if we were just to focus on that here, is there any way that we could find other than that it's still not settled in the scientific community? And if we were to find that, hypothetically, then doesn't it take it out of Zouderer and then put it in central Hudson and then the state's got to show it's narrowly tailored? We agree entirely, Your Honor. And by the way, this court isn't, this panel isn't reinventing the wheel. In Cal Chamber at page 478, including the footnote on that page, the court addresses what it means for something to be controversial, how much disagreement there has to be. And the court held at the very least when there is a robust disagreement by reputable scientific sources, you've got a controversy. And in that case, the court found a controversy even though EPA, IARC, and NTP all agreed that acrylamide posed a cancer hazard to people. It found a controversy nonetheless because the National Cancer Institute, the American Cancer Society, and various other experts disagreed. So what's our breakdown here that we're looking at? Okay, so here's the breakdown, Your Honor. There isn't a single agency worldwide, not IARC, not anybody else, not California, that has looked at this issue and concluded that glyphosate poses a risk of cancer in the real world. What the lineup is is four of these agencies, including the two primary UN experts, FAO and WHO itself in a joint task force, concluded that it poses no risk of cancer. Canada concluded no risk of cancer. Australia concluded no risk of cancer. Japan concluded no risk of cancer. Now, other agencies looked at whether it even is capable of causing cancer at the highest levels of exposure, not risk but hazard. As to that, IARC concluded it probably poses a hazard, didn't address risk. EPA said unlikely to pose a hazard. And what that means, when EPA concludes that, is it finds no basis for a hazard concern. In addition, the European Food Safety Authority and the European Chemicals Agency, which are the two primary EU authorities, concluded that it is unlikely to pose a cancer hazard, meaning unlikely to even be capable of causing cancer, and New Zealand agrees with that. So you look at the lineup, and basically on hazard, IARC stands alone with the U.S. and the EU and New Zealand on the other side. And as to risk, no one has found a risk, and everyone that's looked at it has concluded that it poses no risk. But based on that distinction between hazard and risk, are you arguing that this new safe harbor warning is not even accurate, is not even factual? Because it talks mostly about risk, and I think a reasonable consumer would say IARC has determined it's a risk. That's exactly one of the problems here, Your Honor. And there's five different problems, and I'm happy to go through them, and they all can be decided as a matter of law. But one of them, Your Honor, is exactly that, which is given that it starts out with a warning symbol, says Proposition 65 warning in all-cap letters, then tells you that IARC has found it's a probable cancer hazard, and then you drop down to the fourth sentence, and they tell you that your potential risk will be affected by the duration and level of your exposure. Anybody that looks at this, any reasonable consumer, is going to think IARC is addressing risk, and it's not. So if you could address that, why should we determine this as a matter of law versus remanding to the district court? Generally, when something new happens, we remand it to the district court. No, that's right, Your Honor. What the Supreme Court held in Zauderer, because in Zauderer in looking at the attorney's speech and whether it was misleading, addressed the very same question and said, when it's self-evident that something tends to mislead, there is no need for a survey. This court used that same reasoning in cases like video software dealers, when it affirmed it was an unpublished opinion, but when it affirmed in CTI versus San Francisco, same thing. There's only one case that we know of in this area, and that's Calchamber where anyone has used a survey, because quite often it is self-evident what message is being sent, whether that message is controversial or misleading. In the way that Your Honor just suggested, this one's misleading, but it's misleading in one other way and controversial as well. The other way in which it's misleading is, yes, they now have added to it other authorities with similar determinations. Well, that hides far more than it reveals. It doesn't give the reader any sense of the lineup that I just suggested. No reader will read that and appreciate that not a single agency in the world has concluded that this is a risk. So it's misleading in that way. Okay. So say we disagree with you. We want to remand for determination of the new safe harbor language. What should we do about everything that happened in the past? Is it a one-line sentence we remand, or should we have to do a full opinion to say we agree with or disagree with what the decision is? Certainly, Your Honor. If I can preface it with one note, which is my explanation earlier that it's not purely factual on its face because it makes us convey IARC's opinion, there's no reason to remand that at all. That's on the face of the warning. It doesn't require any factual development. No factual development would change that. But if this court nonetheless were to remand to determine whether it's sending a controversial, misleading message, we suggest that the court agree with Judge Shub's findings that he has made as to the other alternative warnings, et cetera, and then just remand the case. There is absolutely no call for a vacater here. This court has remanded several other injunctions for district courts to look at, and it's never vacated any of them, not only the Santa Barbara case that we cite, but actually two of the cases that the AG cites in his supplemental brief, the only two cases he cites from the Ninth Circuit, which are the Hayes v. Concanon and NRDC v. Winter cases. Those were both remands without vacater. Same thing. And there's good reason for that because if the AG had done this the way that it probably should have been done had they wanted a court to think about it again, Okay, but if we remand it, then we have the next appeal, right? Of course you do. Your Honor, the problem here is that we've been playing whack-a-mole. How long has this been going on? It's been going on for six years, and we've been playing whack-a-mole for six years. There is a need for finality here for all sorts of things. Then what is your bottom line position, that there can be no requirement of labeling of risk unless, unless every reputable agency in the world agrees that this is a cancer-causing substance? Our bottom line, Your Honor, is that there can be no warning in that circumstance under Zouderer. We're not excluding the possibility that a warning could survive Central Hudson review on the right record. The reason that this absolutely flunked Central Hudson, even putting aside our arguments about the state's interest, is that NIFLA made quite clear that it is California's burden to prove that it couldn't adequately get the message out itself. And California failed for the exact same reasons in this case. There's not a scintilla of evidence in the record that California, through a public information campaign, couldn't get its message out. So, Your Honor, there may be cases where a warning can be given in circumstances where there's disagreement, but you'd have to satisfy heightened review, and you should have to, because you're making someone convey subjective opinions that other people hold and that they disagree with quite legitimately. Okay, so if... I understand you to challenge saying it's not factual, it's misleading, and also it's controversial. Does the court have to find all of those, or... Just one of the various... If the court finds any one of the reasons that we set forward sufficient, that's the end of the case. There's another reason, by the way... Well, that takes it out of Zouder. It takes it out of Zouder, and for the reasons that I've suggested, there's no way that they can satisfy Central Hudson. Well, they say they can, but... I know they say they can, but they actually need evidence. And that's what the Supreme Court held in NIFLA, is they need evidence. And there is zero evidence that they couldn't get the word out on this themselves. Now, Your Honor, there's one other ground... Just because there's been discussion of a remand here, and you said it shouldn't be vacated, but what would it look like in front of Judge Shub if it went back? What would he do that we cannot do? There's nothing, Your Honor. I should say I don't think there's any reason that he would do anything different. I think he would find these to be, again, in the Supreme Court's words, self-evidently sending messages that are controversial and misleading. If, on the other hand, he doubted that, he could take evidence in the form of surveys of how consumers react to this warning. Your Honor, there's one other respect in which this warning completely flunks, which is at the end of it, it points the consumer to a website, to the Prop 65 website. I looked at that this morning to take a look and see, well, what does it say on that website? And if you were to click on it, Your Honor, what you'd see is at the very top of the first page, it says glyphosate listed as causing cancer. You then look at the fact sheet for glyphosate that you can click on from there, and it tells you, should I be concerned about potential exposure to glyphosate? This is in a yellow box at the very top. Glyphosate is on the Proposition 65 list because it has been identified as a carcinogen. Well, Your Honors, firstly, I don't think as a First Amendment matter, the state can ever force you to just advertise a website that they can change every day and put whatever they want on it. And secondly, this website, which they're pointing people to, doesn't even hint at or suggest the messages that we believe are self-evidently conveyed. So is that misleading or is that not factual? What is that in your position? It is misleading, Your Honor. It is just flatly misleading because it doesn't give the reader any sense that there's disagreement about this or that this is an outlier minority position. Any reader, anybody reading this and seeing listed as causing cancer will believe it's listed as causing cancer because it causes cancer. And, Your Honor, if you take the warning as a whole, by the way, getting back to controversial, one of your questions, you start off again, Prop 65 warning, all caps. You're told about IARC and its view that it's a probable carcinogen, and you're told that your potential risk depends on your level and your duration of exposure. There is no way that a consumer who reads that isn't getting the message that this is a dangerous and risky product. In fact, my friend started out her argument today by saying – Sorry, General. Can I ask this website issue that you just identified, was that in your supplemental brief? It was not, Your Honor, because it could be changed at any time, and we did it this morning. Oh, I see. I mean, doesn't that counsel in favor of remanding, because this is a new argument that I'm hearing for the first time. I'm wondering if this court needed to rule on that argument. But for all the reasons I've suggested today, there's four other reasons. Right. But I'm suggesting it seems like there's even more reasons that you might want to develop. There's even more reasons. Although they could change it in the interim, right? It's a website. They could make it completely anodyne between now and then, Your Honor. And I – sorry, I kind of lost my train there for a moment. But there is no – there just simply is no basis to look at this warning and not appreciate that it is telling consumers, be careful, this is dangerous. It's basically a flashing danger sign. Picture a parent walking down a cereal aisle and pulling out a box of cereal and seeing this warning on it. They would immediately put the cereal back because it communicates, as my friend here suggested when she started this morning, it communicates to risks to consumers. She said risks that the consumers may or may not want to take. But it communicates that risk. And in a circumstance where every agency internationally that has looked at it has concluded there is no risk, that is a highly controversial message, not something that can be given under Zatter. Finally, if I may address CTI v. Berkeley because it was their primary case, they're just reading it wrong. If you look at the court's decision in that case at 847, it is the losing plaintiffs that argued that it communicated that exposure to RF above the federal – the FCC limits posed a danger. And it's the court that said we do not read the text that way and read it only to suggest that it was safe below that, not that it was dangerous above that, and therefore it didn't wade into the scientific controversy over whether RF was dangerous. That's why it wasn't controversial, because nothing in the warning took a position on that controversy. This one is controversial because it explicitly does. We don't have any additional questions. Thank you. Thank you. Thank you. I have a lot to address, so I'll try to talk fast. Well, if we still have questions, you can keep talking. I'll give you an extra minute because I took them a minute over. Okay, great. Thank you. We do read CTIA differently, and we believe that CTIA was very clear that just a scientific controversy is not to take something out of the ambit of Zotter. However, we do also believe that this warning passes muster under central Hudson. We do believe that there's the requisite fit between the means and the ends. For example – But putting that website, that bothers me when you see the things on the website. I mean, that's pretty – So I'm at a disadvantage because I did not look at the website this morning. I don't know what it says. But it's in your – That's right. It's in your message. The last time I saw it, it listed the IARC finding, the EPA finding, the findings of all of these other agencies, and then some. It was a very balanced presentation of the state of the science. And it is true that IARC has found glyphosate to be a probable human carcinogen, and a carcinogen in animals, and there's evidence of genotoxicity. This is – Well, I can represent – the opposing counsel is representing the website correctly. I'm looking at it. Okay. And it doesn't give any of those conditionals that you're talking about. It does not list any other agencies. It says glyphosate is on the Prop 65 list because it has been identified as a carcinogen. Right. Period. Right. And is there a place to click to get to the other agency determinations? Maybe. Not easily accessible. Okay. Right. Access by the yellow caution sign. Right. Okay. Anyway, go ahead. I'll continue. Oh, yeah, my co-counsel gave me a sheet of paper that lists a large number of agencies and their findings on glyphosate. Just quickly, we do think it's narrowly tailored under Central Hudson. It is always more effective to have point-of-sale warnings. That's part of the reason there are these commercial disclosures like APR calculations and things of that nature. Counsel – Well, it is more effective to compel speech of someone to agree with you. That would be more effective, but – I'm sorry, it's more – Well, of course it would be more effective to compel speech that is what you want to say. So you still have to get past that. But the test isn't what Monsanto wants to say about its product. The test is, is it purely factual and uncontroversial? We maintain that it is uncontroversial because of the case law. We do acknowledge that there is language in CERT, the Council for Education and Research on Toxics case that this court recently decided, that says – that was concerned with the known-to-the-state-to-cause-cancer warning and said that a warning could be controversial if it elevated one side of the scientific debate. Counsel, I think one of the amicus raised the issue of dilution of warning labels. Does the state have any concern about that if you're using warnings for everything, that consumers are not going to be paying them attention? That is always a concern. And one thing I should mention just quickly is the way the statute works is a chemical gets listed, but it doesn't – the statute doesn't require a warning unless there is a risk above a certain level. In other words, unless the business can't show that it's below the significant risk level. So the only time, in theory, the only time people will see these warnings is if there's a significant risk. That was another question I had. Are you abandoning – there was a mootness or a ripeness question below. You're not arguing that now? We're not arguing ripeness now. Just quickly because I see I'm almost out of time, this is purely factual. It is not a matter of opinion. These are statements that we would contend would be judicially noticeable. Nothing in the statement about risk does anything to undermine or contradict the very strong and direct statement about EPA and the other agencies' findings that came before it. At most, in context, this warning might make someone who's risk-averse and inclined to credit the IARC view take some precautions when using the chemical. So is – that this chemical is a carcinogen, is that purely factual? That's not what we – that's not what we're arguing. Well, it's not what you're arguing, but you have the website, and then the website leaps to that, right, as we speak right now. So how could that be purely factual? I believe what the website says is that IARC has identified it as a carcinogen. No? It has been identified. Oh, it has been identified as a carcinogen. Passive. That is a purely factual statement. In science, if something— Factual, but kind of misleading. Okay. That's a different issue. But in science, if a chemical – and in Proposition 65 under the AFL-CIO case, if a chemical causes cancer in animals, it is considered a carcinogen, and it goes on the Prop 65 list. The warning is tailored to – you know, because we understand the consumers— All right. You need to wrap up. I'm giving you – I'm being very lenient. Okay. Just quickly, there was an issue about whether this warning complies with state law. We believe that it does comply with state law to the extent there's any question in the court's mind about that. This matter of state law, in our view, should be decided by the district court. In general, we believe the overbroad reasoning that plaintiffs are endorsing goes beyond what the First Amendment supports. And the First Amendment doesn't require either a scientific consensus or absolute agreement before a state may establish a substantial public safety interest in requiring warnings that a product may pose health hazards. At a minimum, a warning like the New Safe Harbor warning merely alerts people to the different conclusions of different agencies satisfies Zauter. Thank you very much. Thank you both for your helpful argument in this matter. This court will stand adjourned until tomorrow at 9 a.m.
judges: SCHROEDER, CALLAHAN, BUMATAY